UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HELENA MCELROY,

    Plaintiff,

v.                                                              Case No.:  8:23-cv-2928-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____

# OPINION AND ORDER

Plaintiff  Helena McElroy seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for supplemental security income benefits. The Commissioner filed the Transcript of the proceedings ("Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their positions. As explained below, the decision of the Commissioner is **AFFIRMED** under § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

        **A.**    **Social Security Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505–404.1511, 416.905–416.911.

### B.     Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Unlike findings of fact, the Commissioner's conclusions of law are not presumed valid and are reviewed under a de novo

standard. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *Maldonado v. Comm'r of Soc. Sec.*, No. 20-14331, 2021 WL 2838362, at *2 (11th Cir. July 8, 2021); *Martin*, 894 F.2d at 1529. "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066.

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. 20 C.F.R. § 404.1520(a)(4)(i), (b); 20 C.F.R. § 416.920(a)(4)(i), (b). At step two, the ALJ must determine whether the impairment or combination of impairments from which the claimant allegedly suffers is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); 20 C.F.R. § 416.920(a)(4)(ii), (c). At step three, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. 20 C.F.R. § 404.1520(a)(4)(iii), (d); 20 C.F.R. § 416.920(a)(4)(iii), (d). If the ALJ finds the claimant's severe impairments do not meet or medically equal a listed impairment, then the ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv), (e)–(f); 20 C.F.R. § 416.920(a)(4)(iv), (e)–(f).

If the claimant cannot perform her past relevant work, the ALJ must determine at step five whether the claimant's RFC permits her to perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). At the fifth step, there are two ways in which the ALJ may establish whether the claimant is capable of performing other work available in the national economy. The first is by applying the Medical Vocational Guidelines, and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004); *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015).

The claimant bears the burden of proof through step four. *Atha*, 616 F. App'x at 933. If the claimant meets this burden, then the burden temporarily shifts to the Commissioner to establish the fifth step. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 416.920(a)(4)(v), (g). If the Commissioner presents evidence of other work that exists in significant numbers in the national economy that the claimant is able to perform, only then does the burden shift back to the claimant to prove she is unable to perform these jobs. *Atha*, 616 F. App'x at 993.

### C. Procedural History

Plaintiff applied for supplemental security income benefits on May 20, 2021, alleging disability beginning on August 7, 2007. (Tr. 117, 224-225). At the hearing, Plaintiff amended the onset date to the filing date. (Tr. 43). The application was

denied initially and on reconsideration. (Tr. 117, 126). Plaintiff requested a hearing, and on May 1, 2023, a hearing was held before Administrative Law Judge Ryan Kirzner ("ALJ"). (Tr. 34-81). On July 3, 2023, the ALJ entered a decision finding Plaintiff not under a disability since May 20, 2021, the date the application was filed. (Tr. 17-28). Plaintiff requested review of the decision, but the Appeals Council denied Plaintiff's request on October 18, 2023. (Tr. 1-5). Plaintiff filed a Complaint (Doc. 1) on December 21, 2023, and the case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (Doc. 1).

### D.     Summary of ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 20, 2021, the application date. (Tr. 19). At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine, coronary artery disease, chronic obstructive pulmonary disorder (COPD), osteoarthritis of the bilateral knees, hypertension, hyperlipidemia, depressive disorder, anxiety disorder, panic disorder, borderline personality disorder, bipolar disorder, and posttraumatic stress disorder (PTSD)." (Tr. 19-20). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the

severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). (Tr. 20).

Before proceeding to step four, the ALJ found that Plaintiff had the following RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 [C.F.R. §] 416.967(b) except occasional pushing and pulling bilaterally with the upper and lower extremities; occasional operation of foot controls; never climb ladders, ropes, and scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; frequently overhead reach bilaterally; avoid extremes in temperature both hot and cold; avoid concentrated exposure to fumes, odors, dust, gases, and pulmonary irritants; avoid concentrated exposure to workplace hazards, defined as moving mechanical parts and unprotected heights; no operation of motor vehicles; limited to simple, routine tasks; occasional interaction with supervisors, co-workers, and the public; and able to adapt to simple workplace changes in a setting that is not fast paced.

(Tr. 23).

At step four, the ALJ determined that Plaintiff was unable to perform her past relevant work as a telephone sales representative. (Tr. 26). At step five, the ALJ found that considering Plaintiff's age (49 years old on the date the application was filed), education (at least high school), work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 27). Specifically, the vocational expert testified that a person with Plaintiff's limitations could perform such occupations as:

    (1)   Merchandise Marker, DOT 209.587-034,[1] light, SVP 2

    (2)   Routing Clerk, DOT 222.687-022, light, SVP 2

    (3)   Assembler, Small Parts, DOT 706.684-022, light, SVP 2

(Tr. 27). The ALJ concluded that Plaintiff had not been under a disability since May 20, 2021 the date the application was filed. (Tr. 28).

## II.   Analysis

Plaintiff argues that the ALJ erred in only briefly mentioning Plaintiff's complaints of urinary problems, specifically urinary frequency, urgency, and incontinence. (Doc. 21, p. 3-4). Plaintiff contends that the ALJ did not list this impairment as severe or non-severe, and the decision does not specifically find her complaints not supported. (Doc. 21, p. 4).

An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations secondary to her established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009). In determining a claimant's RFC, the ALJ must consider all relevant evidence including non-severe impairments. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010). Furthermore, the ALJ must "'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Henry v. Comm'r of Soc.*

---

[1] DOT refers to the *Dictionary of Occupational Titles*.

*Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)). In other words, ALJs "are by law investigators of the facts and are tasked not only with the obligation to consider the reasons offered by both sides, but also with actively developing the record in the case." *Id*.

At the hearing, Plaintiff testified that she has an issue with frequent bathroom use. (Tr. 45). She testified that she has to use the bathroom at least every 30 minutes when she worked, and the problem has gotten worse. (Tr. 46). Her doctor referred her to a specialist, but she had not seen one at the time of the hearing. (Tr. 46-47).

In support of her argument, Plaintiff cites to treatment notes starting years before the application date of May 20, 2021. These include: an October 25, 2013 treatment note, indicating Plaintiff complained of blood in the urine, pain, and frequency of urination, and was diagnosed with stress incontinence; a June 3, 2014 treatment note indicating Plaintiff complained of frequent urination with some dribbling; an April 24, 2019, treatment note with Plaintiff complaining of urinary incontinence and was referred to a specialist; and an April 17, 2020, treatment note, indicating Plaintiff had an overactive bladder. (Doc. 21, p. 5 (citing Tr. 452, 463-64, 570, 585)). During the relevant period, Plaintiff cites only one treatment note from June 9, 2021, that simply showed Plaintiff was diagnosed with "unspecified urinary incontinence." (Tr. 689). Plaintiff also cites treatment notes, listing a prescription for

Oxybutynin, which Plaintiff claims is a medication for urinary frequency. (Doc. 21, p. 5 (citing Tr. 558, 577, 655, 713, 759)).

In the decision, the ALJ acknowledged Plaintiff's testimony that she "has to frequently use the bathroom and at times cannot make it to the restroom in time. She testified that she was referred to a specialist but has not made an appointment as of the time of the hearing." (Tr. 23-24). Other than this reference, the ALJ did not discuss Plaintiff's alleged urinary frequency, urgency, or incontinence in the decision.

That said, the ALJ did consider whether Plaintiff's subjective statements were supported by the record. (Tr. 24). The ALJ found:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record.

(Tr. 24).

Generally, a claimant may establish that she is disabled through her own testimony of pain or other subjective symptoms. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). In such a case, a claimant must establish:

> "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the

> objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."

*Id.* (quoting *Dyer*, 395 F.3d at 1210). A decision will be affirmed as long as the decision is not a "broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1211 (quotation and brackets omitted).

Plaintiff cites no records that show Plaintiff received any objective testing to support her allegations of urinary frequency, urgency, or incontinence. At most, Plaintiff complained about urinary frequency, urgency, or incontinence sporadically in 2013, 2014, 2019, and 2020, obtained medication to help with the problem, and received a diagnosis of urinary incontinence in 2021. (Tr. 452, 463-64, 570, 585, 689). Plaintiff also cited no medical records showing that a physician found Plaintiff required more bathroom breaks or time off-task to accommodate urinary frequency, urgency, or incontinence. The ALJ also considered Plaintiff's daily activities that showed that Plaintiff had no difficulties with personal care, could prepare simple meals, could leave the house independently, and could go shopping with a companion, which support the ALJ's RFC findings. (Tr. 22, 24).

In sum, the ALJ considered Plaintiff's medical conditions as a whole in assessing the RFC. Prior to the relevant period, the medical records reflect infrequent mentions of urinary frequency, urgency, and incontinence, and after the relevant

period, the records only mention a diagnosis of urinary incontinence once. The ALJ acknowledged Plaintiff's testimony about urinary frequency, urgency, and incontinence, but found Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms not to be entirely consistent with the medical evidence. The ALJ properly considered the medical and other evidence of record in assessing the RFC. Taking the record and the decision as a whole, substantial evidence supports the ALJ's RFC assessment and the ALJ did not err.

### III. Conclusion

For the reasons discussed above, the Court finds that the decision of the Commissioner is supported by substantial evidence and the Commissioner applied the correct legal standard. The decision of the Commissioner is **AFFIRMED**. The Clerk of Court is directed to enter judgment consistent with this opinion, terminate all deadlines, and close the case.

**DONE** and **ORDERED** in Fort Myers, Florida on March 3, 2025.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties